**John MOLLOY, Plaintiff,**

v.

**ALLIED VAN LINES, INC., Defendant.**

**No. 602CV402ORLJGG.**

United States District Court,
M.D. Florida,
Orlando Division.

May 28, 2003.

Luis A. Gonzalez, L.A. Gonzalez Law Offices, P.A., Orlando, FL, for Plaintiff.

Gilda M. Chavez, Dombroff & Gilmore, PC, Miami, FL, for Defendant.

## ORDER

GLAZEBROOK, United States Magistrate Judge.

This cause came on for a hearing on March 13, 2003 on the following motion:

**MOTION: ALLIED VAN LINES, INC.'S SECOND MOTION FOR SUMMARY JUDGMENT (Doc. No. 30)**

**FILED: JANUARY 13, 2003**

**THEREON** it is **ORDERED** that the motion is **DENIED.**

## I. *THE ISSUES*

On March 14, 2002, plaintiff John Molloy hired defendant Allied Van Lines Inc. ["Allied"] to transport his belongings, including personal belongings, furniture, antiques, and work-related material from Mahwah, New Jersey, to Eustis, Florida. Pursuant to an instruction from Allied's salesman, Molloy prepared an inventory of the property to be transported. *See* Amended Complaint, Docket No. 26, Ex. 26. Molloy consigned his property to Allied for interstate shipment under a bill of lading. The bill of lading required Molloy to pay Allied, on delivery, $4,523.83 for the transportation services rendered. *See* Bill of Lading & Freight Bill, Docket No. 30, Ex. A. In case of loss or damage, the bill of lading also required Molloy to provide Allied with a written notice of his claim within nine months from the date of delivery as a condition precedent to recovery.[1] Docket No. 30, Ex. A.

---

1. The bill of lading [Docket No. 30, Ex. A] provides:

 Section 6: As a condition precedent to recovery, a claim for any loss or damage, injury or delay must be filed in writing within nine (9) months after delivery to consignee as shown on the face hereof, or in the case of failure to make delivery, then within nine (9) months after a reasonable time for delivery has elapsed .... Where a claim is not filed ... in accordance with the foregoing provisions, carrier shall not be liable and such claim will not be paid.

On April 3, 2000, Allied's van and agent arrived at Molloy's Florida residence to deliver the property transported from New Jersey. Allied's agent began unloading. According to Molloy, a considerable amount of his property was missing, and many of the items being delivered were damaged. Molloy refused to sign a release recognizing the delivery of the shipment. Molloy also refused to pay Allied $4,523.83 for the transportation. As discussed in greater detail below, Molloy's attorney sent two letters to Allied on May 31, 2000 and July 7, 2000 claiming compensation for the lost and damaged household goods.

On August 29, 2002, Molloy filed an amended complaint against Allied in the United States District Court, Docket No. 26, claiming damages during the interstate transportation of Molloy's property. On January 13, 2003, Allied filed the pending motion for summary judgment seeking dismissal of Molloy's action on two grounds. Docket No. 30. First, Allied argues that Molloy's claims are barred by his failure to give Allied adequate and timely written notice of his claim as required by the bill of lading. Second, Allied argues that Molloy's claims are barred by his failure to pay $4,542.83 in shipping fees due to Allied on delivery. Allied contends that it is entitled to recover the shipping charges from Molloy as a matter of law before Molloy may pursue a claim for non-delivery or damage.

## II. THE LAW

### A. Standard of Review on Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Jeffery v. Sarasota White Sox*, 64 F.3d 590, 593—94 (11th Cir.1995); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir.1991). A moving party discharges its burden on a motion for summary judgment by showing the Court that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits, and to move for summary judgment on the case as a whole or on any claim. *Id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant, and resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir.1989); *Samples on Behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

> in deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The op-

posing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one. *Jeffery v. Sarasota White Sox,* 64 F.3d 590, 594 (11th Cir.1995), quoting *WSB–TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir.1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron and Steel Works v. Employers Insurance of Wausau,* 835 F.2d 855, 856 (11th Cir. 1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. On a summary judgment motion the Court may not weigh the credibility of the parties. *See Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1531 (11th Cir. 1987). If the determination of the case rests on which competing version of the facts or events is true, the case should be presented to the trier of fact. *Id.*

**B. *Material Submitted in Opposition to Summary Judgment***

 Federal Rule of Civil Procedure 56(c) provides that the party making a motion for summary judgment may submit affidavits to support its argument as to the absence of a genuine issue of material fact. Rule 56(e) provides as follows regarding the materials that the non-movant must submit in response:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The non-movant must adduce significant probative evidence that would be sufficient for a jury to find for the non-movant. *LaChance v. Duffy's Draft House,* 146 F.3d 832, 834 (11th Cir.1998), *citing Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. 2505. A reviewing court generally cannot consider inadmissible hearsay evidence in opposition to a summary judgment motion. *Macuba v. Deboer,* 193 F.3d 1316, 1322 (11th Cir.1999). In considering a motion for summary judgment, a reviewing court must consider all the proffered evidence and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition. *Kennett–Murray Corporation v. Bone,* 622 F.2d 887, 893 (5th Cir.1980). However, when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an is-

sue with an affidavit that merely contradicts, without explanation, previously given clear testimony. *Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir.1984).

## C. *The Carmack Amendment*

Congress has enacted statutes that govern transportation, including the transportation of "household goods" by motor carrier.[2] *See generally*, 49 U.S.C., Part B, Chapters 131—49. It is the policy of the United States to oversee interstate motor carrier transportation in a manner that promotes competitive and efficient motor carrier transportation services, and meets the needs of shippers and consumers. 49 U.S.C. § 13101(a)(2). Congress directs that the transportation law be administered and enforced to carry out that policy and to promote the public interest. 49 U.S.C. § 13101(b).

Congress has enacted a statute—often referred to as the Carmack Amendment—governing the liability of motor carriers (like Allied) to shippers (like Molloy) who claim loss or damage to shipped property. 49 U.S.C. § 14706.[3] A carrier that ships goods, including household goods, is liable to the shipper for the "actual loss or injury to the property" cause by the carrier. 49 U.S.C. § 14706(a)(1). The shipper may bring a civil action against the carrier responsible for the loss. 49 U.S.C. § 14706(d)(2). Federal and state courts have concurrent jurisdiction. 49 U.S.C. § 14706(d). In a dispute with a household goods carrier involving a claim of $5,000 or less, the shipper may instead demand binding arbitration. 49 U.S.C. § 14708(b)(6) (1999).

■ The Carmack Amendment creates a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading. *Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 704 (4th Cir.1993) (citing *Adams Express Co. v. Croninger*, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913)). To accomplish the goal of uniformity, the Carmack Amendment creates a single cause of action, and preempts all other state law claims arising from failures in the transportation and delivery of goods. *Smith v. United Parcel Service*, 296 F.3d 1244, 1246 (11th Cir.2002); *North Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 456 (7th Cir.1996); *accord Moffit v. Bekins Van Lines Co.*, 6 F.3d 305 (5th Cir.1993).

■ The purpose of the Carmack Amendment is to protect shippers from the negligence of interstate carriers, and to relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods. *Fine Foliage of Florida v. Bowman Transportation, Inc.*, 901 F.2d 1034, 1037 (11th Cir.1990). The Carmack Amendment intends: 1.) to hold carriers responsible for damage they cause to transported goods; 2.) to encourage payment of claims without litigation; 3.) to facilitate prompt investigation of claims; and 4.) to prevent carriers from discriminating between ship-

---

**2.** "Household goods" are personal effects and property to be used in a dwelling where the householder arranges and pays for the transportation of the goods. 49 U.S.C. § 13102(10); *accord*, 49 C.F.R. § 375.1(b)(1).

**3.** Effective January 1, 1996, the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 14706, recodified and modified the Carmack Amendment to the Inter-

state Commerce Act, previously found at 49 U.S.C. § 11707 (1995). This revision worked no substantive change on the Carmack Amendment. *Project Hope v. M/V IBN Sina, et al.*, 250 F.3d 67, 73 (2d Cir.2001). Despite the revision, the Interstate Commerce Commission Termination Act is still commonly referred to as the "Interstate Commerce Act" or the "Carmack Amendment."

pers by paying claims of favored shippers while rejecting claims of others. *See Georgia, Florida & Alabama Railway v. Blish Milling Co.,* 241 U.S. 190, 195—97, 36 S.Ct. 541, 60 L.Ed. 948 (1916); *East Texas Motor Freight Lines v. U.S.,* 239 F.2d 417, 420 (5th Cir.1956).

Pursuant to the Carmack Amendment, carriers such as Allied may contractually limit the time within which shippers may file damage claims, provided the limit is not less than nine months.[4] 49 U.S.C. § 14706(e)(1). The nine-month deadline facilitates prompt and accurate investigation of a party's claim for injury. The purpose for such a clause is not to escape liability, but to ensure reasonable notice for a proper and fair investigation. *Georgia, Florida & Alabama Railway v. Blish Milling Co.,* 241 U.S. 190, 195—96, 36 S.Ct. 541, 60 L.Ed. 948 (1916).

■■■ To establish a prima facie case against a carrier under the Camrack Amendment, a shipper must prove that the goods: 1.) were delivered to the carrier in good condition; 2.) arrived at the final destination in a damaged or diminished condition; and 3.) resulted in the amount of the damages. *Fine Foliage of Florida,* 901 F.2d at 1037. Upon such a showing, the burden shifts to the carrier to show both that it was free from negligence, and that the damage to the cargo was due to one of the accepted causes relieving the carrier of liability. *See Missouri Pac. R.R. Co. v. Elmore & Stahl,* 377 U.S. 134, 137, 84 S.Ct. 1142, 12 L.Ed.2d 194 (1964). The Carmack Amendment has the effect of codifying the common-law rule that a carrier is liable for damage to goods transported by it unless it can show that the damage was caused by an act of God, a public enemy, an act of the shipper himself, public authority, or the inherent vice or nature of the goods. *Id.*

**D. *The Interstate Commerce Commission Regulations***

Congress has authorized the Secretary of Transportation to prescribe regulations to carry out the motor carrier transportation statute generally, 49 U.S.C. § 13301(a), as well as regulations specifically to protect individual shippers in the transportation of household goods, 49 U.S.C. § 14104(a)(1). Congress has directed that regulations protecting individual shippers must include, where appropriate, reasonable performance standards for the transportation of household goods, taking into account seven factors specified by Congress. 49 U.S.C. § 14104(a)(2).

■■ The Secretary has promulgated two sets of nearly-identical regulations, each captioned "Principles and Practices for the Investigation and Voluntary Disposition of Loss and Damage Claims and Processing Salvage." *See* 49 C.F.R., Subtitle B, Chapter III, Part 370 (relating to the Federal Motor Carrier Safety Administration) (2001); and 49 C.F.R., Subtitle B, Chapter X, Part 1005 (relating to the Surface Transportation Board) (1981). The regulations in Part 370 govern the processing of claims for loss and damage to property transported in interstate commerce by a motor carrier. 49 C.F.R. § 370.1. Undefined terms used in the regulations are given their ordinary practical meaning.[5] 49 C.F.R. § 370.1(b)(8).

---

4. Specifically, 49 U.S.C. § 14706(e)(1) of the Carmack Amendment states:

A carrier may not provide by rule, contract or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section. The period for brining a civil action is computed from the date the carrier gives a person written notice that the carrier has disallowed any part of the claim specified in the notice.

5. A district court normally will defer to an agency's reasonable interpretation of a statute. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837,

■ According to the regulations, carriers are liable for loss or damage to any articles caused by the carrier while being transported. 49 C.F.R. § 375.12(b). A carrier shall not voluntarily pay a claim unless the shipper has filed a claim with the carrier within the applicable time limits. 49 C.F.R. § 370.3(a); 49 C.F.R. 1005.2(a). Given the statutory scheme for apportioning liability among the carriers participating in the shipment, it makes sense to avoid the payment of claims that have never been demanded. A notice of claim will be considered sufficient only if it meets five specific minimum requirements. 49 C.F.R. § 370.3(b); 49 C.F.R. § 1005.2(b).[6] First, the claim must be a written or electronic communication. *Id.* Second, the claim must be filed with a proper carrier within the time limits specified in the bill of lading. *Id.* Third, the claim must contain facts sufficient to identify the shipped property. 49 C.F.R.

§ 370.3(b)(1); 49 C.F.R. § 1005.2(b)(1). Fourth, the claim must assert liability for the alleged loss or damage. 49 C.F.R. § 370.3(b)(2); 49 C.F.R. § 1005.2(b)(2). Fifth, the claim must seek the "payment of a specified or determinable amount of money." 49 C.F.R. § 370.3(b)(3); 49 C.F.R. § 1005.2(b)(3). Under the fifth requirement, a claim may be sufficient even if it does not seek a "specified" amount of money, so long as the claim seeks a "*determinable*" amount of money.[7] Only the fifth requirement—whether Molloy's claim seeks a determinable amount—is contested in this case.

Some documents—standing alone—do not meet each of the five minimum filing requirements. For example, carriers will not consider sufficient an appraisal report of damage or an inspection report by a carrier or a carrier's inspection agency, *standing alone*, even if it does indicate the loss or damage in dollars and cents. 49

---

844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (Courts have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer); *accord, Jamerson v. Chater,* 112 F.3d 1064, 1065–66 (9th Cir.1997); *Nelson v. Apfel,* 131 F.3d 1228, 1234–35 (7th Cir.1997). A district court will not defer, however, if the agency's interpretation is manifestly contrary to the statutory standard that the regulations purport to implement. *Sullivan v. Zebley,* 493 U.S. 521, 528, 541, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).

**6.** (b) *Minimum filing requirements.* A written or electronic communication (when agreed to by the carrier and the shipper or receiver involved) from a claimant, filed with a proper carrier within the time limits specified in the bill of lading or contract of carriage or transportation and:

 (1) Containing facts sufficient to identify the baggage or shipment (or shipments) of property,

 (2) Asserting liability for the alleged loss, damage, injury, or delay, and

 (3) Making claim for the payment of a specified or determinable amount of mon-

ey, shall be considered as sufficient compliance with the provisions for filing claims embraced in the bill of lading or other contract of carriage; provided, however, that where claims are electronically handled, procedures are established to ensure reasonable carrier access to supporting documents.

49 C.F.R. § 370.3(b); 49 C.F.R. § 1005.2(b).

**7.** "Determinable" is defined as: "1: capable of being determined, definitely ascertained, or decided upon; 2: liable to be terminated; terminable." Webster's New Collegiate Dictionary 310 (5th ed.1977). "Determine" in turn is defined, in relevant part, as: "1 a: to fix conclusively or authoritatively; b: to decide by judicial sentence; c: to settle or decide by choice of alternatives or possibilities; d: resolve." Webster's New Collegiate Dictionary 310 (5th ed.1977). Therefore, a "determinable amount" is an amount capable of being determined, ascertained, decided upon, or resolved; capable of being fixed conclusively or authoritatively; or capable of being settled or decided by choice of alternatives or possibilities.

C.F.R. § 370.3(c); 49 C.F.R. § 1005.2(c).[8] This is because an appraisal report, whether obtained by the carrier or by the shipper, rarely asserts liability for the loss (unless it is accompanied by a claim letter). Similarly, such an appraisal report may not be timely filed with the proper carrier; may not contain facts sufficient to identify the shipped property; and may not seek the payment of a specified or determinable amount of money. It makes sense that the regulations restrict carriers from paying claims that have never even been demanded, but may be allocated to other carriers.

The regulations do not require that a claim contain every piece of information pertinent to processing. On the contrary, even a proper claim that complies with all five minimum requirements may be insufficient for payment. For this reason, the regulations contemplate the supplementation of even fully sufficient claims with further documentary evidence. 49 C.F.R. § 370.5(a); 49 C.F.R. § 1005.3(a).

The regulations do not prohibit a claimant from claiming compensation for the estimated cost of repairing a shipped item by attaching to his claim a repair appraisal, so long as the claim and appraisal together establish and claim a "determinable" amount of money. Indeed, the regulations establish a formula for the payment of damage claims that is so complex that it suggests the utility of an expert appraiser's opinion on value.[9]

The regulations instruct carriers how to treat a claim that is filed for an uncertain amount, such as "$100 more or less." 49 C.F.R. § 370.3(d); 49 C.F.R. § 1005.2(d).[10] The carrier cannot simply ignore or deny the claim, but rather "shall determine the condition of the baggage or shipment involved . . . and shall ascertain as nearly as possible the extent, if any, of the loss or damage for which it may be responsible." *Id.* Of course, the carrier will voluntarily pay such a claim only if the claim meets the five minimum factors described above, including the requirement that the claim is for a specified or determinable amount of money. *Id.*

---

**8.** (c) *Documents not constituting claims.* Bad order reports, appraisal reports of damage, notations of shortage or damage, or both, on freight bills, delivery receipts, or other documents, or inspection reports issued by carriers or their inspection agencies, whether the extent of loss or damage is indicated in dollars and cents or otherwise, shall, standing alone, not be considered by carriers as sufficient to comply with the minimum claim filing requirements specified in paragraph (b) of this section.

49 C.F.R. § 370.3(c); 49 C.F.R. § 1005.2(c).

**9.** (b) When settling a claim for loss or damage, a common carrier by motor vehicle of household goods as defined in § 375.1(b)(1) of this chapter shall use the replacement costs of the lost or damaged item as a base to apply a depreciation factor to arrive at the current actual value of the lost or damaged item; *Provided,* that where an item cannot be replaced or no suitable replacement is obtainable, the proper measure of damages shall be the original costs, augmented by a factor derived from a consumer price index, and adjusted downward by a factor depreciation over average useful life.

49 C.F.R. § 370.9(b); 49 C.F.R. § 1005.5(b).

**10.** (d) *Claims filed for uncertain amounts.* Whenever a claim is presented against a proper carrier for an uncertain amount, such as "$100 more or less," the carrier against whom such claim is filed shall determine the condition of the baggage or shipment involved at the time of delivery by it, if it was delivered, and shall ascertain as nearly as possible the extent, if any, of the loss or damage for which it may be responsible. It shall not, however, voluntarily pay a claim under such circumstances unless and until a formal claim in writing for a specified or determinable amount of money shall have been filed in accordance with the provisions fo paragraph (b) of this section.

49 C.F.R. § 370.3(d); 49 C.F.R. § 1005.2(d).

### E. *Whether a Claim is for a Specified or Determinable Amount—The Cases*

 It is well-settled that, as a condition precedent to recovery, a shipper must file a written claim within the time specified by the bill of lading. *See* 49 U.S.C. § 14706(e)(1); 49 C.F.R. § 370.3(b); 49 C.F.R. § 1005.2(b). All jurisdictions strictly construe this statutory requirement. *Holbrook v. Allied Van Lines, Inc.*, Slip Op. No. 02–12030 (11th Cir. December 3, 2002) (unpublished slip opinion) (insufficient evidence of a *timely* written notice to the carrier precluded recovery); *Insurance Company of North America v. G.I. Trucking Company*, 1 F.3d 903, 906 (9th Cir.1993) (recovery precluded where written claim is not filed within the period provided by the bill of lading); *Nedlloyd Lines, B.V. Corp., v. Harris Transport Co., Inc.*, 922 F.2d 905, 908 (1st Cir.1991) (recovery precluded where letters in no way specified the amount of damages within nine-month period); *Pathway Bellows, Inc. v. Blanchette*, 630 F.2d 900, 904 (2d Cir.1980) (written notice provided to the carrier one day late precluded recovery).

The United States Court of Appeals for the Eleventh Circuit has never been asked to determine the sufficiency of a claim for "actual loss or injury to the property" within the meaning of the Carmack Amendment, 49 U.S.C. § 14706(a)(1), or to decide whether a claim seeks the payment of a "specified or determinable" amount of money within the meaning of 49 C.F.R. § 370.3(b)(3) or 49 C.F.R. § 1005.2(b)(3). However, in the unpublished slip opinion *Holbrook v. Allied Van Lines, Inc.*, No. 02–12030 (Dec. 3, 2002), a panel of the Eleventh Circuit (Circuit Judges Birch, Carnes, and Hull) explained that the claimant's written notice must provide "sufficient detail to make the carrier aware of the contours of the claim." *Id.* at 3—4. Similarly, in *Farmland Industries, Inc. v. Seaboard Coast Line Railroad Co.*, 733 F.2d 1509, 1510 (11th Cir.1984), the Eleventh Circuit explained that "one of the principal functions of the notice requirement in the bill of lading is to allow the carrier to exactly compute its losses." [11] *Farmland Industries*, 733 F.2d at 1510.

 Consistent with the I.C.C.'s regulations, the Eleventh Circuit requires a shipper to inform the carrier of the specific amount of his claim, or to inform the carrier of sufficient facts so that the amount can be determined. *See* 49 C.F.R. § 370.3(b)(3) (claim must be for a specific or determinable amount of money); *accord*, 49 C.F.R. § 1005.2(b)(3). A shipper of household goods, however, may not immediately know the precise value of lost property, or know the realistic cost of repairing a damaged item, particularly an item that is an antique. For that reason, a "reasonable accurate indication of the value of the property" is sufficient, particularly when supported by additional documentation (such as appraisal reports) made available to the carrier within the time period required by the bill of lading. *Trepel*, 194 F.3d at 713 (damages "to be determined but not to exceed $150,000" was sufficient under 49 C.F.R. § 1005.2(b)(3)); *see Insurance Company of North America v. G.I. Trucking Company*, 1 F.3d 903, 907 (9th Cir.1993) ("reasonable estimate" of the claim amount is sufficient, moreover

---

**11.** The Eleventh Circuit also distinguished *Farmland Industries* from *Hopper Paper Co. v. Baltimore & Ohio Railroad*, 178 F.2d 179 (7th Cir.1949), *cert. denied*, 339 U.S. 943, 70 S.Ct. 797, 94 L.Ed. 1359 (1950). In *Hopper*, the carrier's actual knowledge of the claim excused the failure to submit a claim in accordance with the notice provisions because in *Hopper*, the carrier knew the exact value of the shipment and the entire shipment was destroyed. In dicta, the panel said that it was doubtful that this Circuit would adopt *Hopper* because it was the minority view.

the amount was arguably determinable from the information made available to the carrier). However, rough or unreasonable estimates of damages, standing alone, do not meet the requirement of a specified or determinable amount. *Adelman v. Hub City Los Angeles Terminal, Inc.,* 856 F.Supp. 1544, 1551 (N.D.Ala.1994) ("estimate varying from $15,000+ to $74,000 was not a reasonable estimate"); *Delphax Systems, Inc. v. Mayflower Transit, Inc.,* 54 F. supp.2d 60, 64 (D.Mass.1999) ("rough estimate . . . that the damage will be in the $40,0000 to $50,000 range failed to make a claim for a specific or determinable amount").

### III. *APPLICATION*

#### A. Molloy's Claim Meets the Five Minimum Requirements

▉▉ Allied's van and agent arrived at Molloy's house on April 3, 2000 to deliver his household goods. At the time of delivery, Allied already had Molloy's partial pre-shipment inventory, which included values. On May 31, 2000, about two months after the delivery date, Molloy's attorney sent a five-page letter to Allied regarding Molloy's losses. *See* Docket No. 26, Ex. D. Specifically, the letter told Allied that:

> Mr. Molloy is currently in the process of assessing the *extensive* damage that resulted from the move that Allied in [sic] responsible for. That will take a while due to the fact that most of the damage was to valuable antiques requiring a multitude of expert appraisers.
>
> In addition, there will be a long list of items that are missing. Until that list is complete, I am herewith enclosing a partial list consisting of five (5) pages. Please have Allied attempt to locate these items in order to mitigate the damages to Mr. Molloy.
>
> I plan to advise your "Legal Department" as to the amounts that will be

required from you for the damages to Mr. Molloy. In the meantime, if your attorney(s) would like to open the negotiations, have him/her contact me.

*See* Docket No. 26, Exhibit D (emphasis in the original). In response, on June 12, 2000, Allied advised Molloy of the need to demand a "specific and determinable amount." *See* Docket No. 30, Exhibit D. Allied also informed Molloy's counsel that Allied required a specific amount and a more detailed description of the damaged or missing items.

On July 7, 2000, Molloy's attorney sent a second written letter in response. *See* Docket No. 26, Exhibit E. Molloy's letter included a lengthy narration of the event explaining Allied's responsibility for the claimed loss, as well as a fifteen-page list detailing the lost and damaged property. Molloy's letter provided specific dollar estimates of the value of approximately 93% of the lost and damaged items on the list— some 615 missing items.

Allied contends that it may avoid liability to Molloy because Molloy's letter did not also provide specific dollar estimates for the remaining 7% of the listed items— the repair of some 39 damaged antiques (and the replacement of four items that were not delivered). But even for those items, Molloy offered Allied appraisals:

> I suggest that we proceed expeditiously to get this case resolved. I believe that we can best do that by meeting at the home of the Molloys' to assess the damages and begin the evaluation process for the missing items. Please arrange, through me, to have a representative made available at the earliest possible time for that purpose.
>
> Noteworthy is the fact that we now have numerous appraisals, photos and other documents that bear on the matter. Obviously, all of this will be made

accessible to your agent at the time of the inspection.

Docket No. 32 at Exhibit E.

Taken together, Molloy's May 31, 2000 and July 7, 2000 claim letters meet the five specific minimum requirements of the ICC regulations, 49 C.F.R. § 370.3(b) and 49 C.F.R. § 1005.2(b). First, Molloy's claim is a written communication. Second, Molloy filed his claim with Allied, the proper carrier, within the nine-month time limit specified in Molloy's bill of lading. Third, Molloy's claim contains facts sufficient to identify his shipped property. Fourth, Molloy's claim asserts Allied's liability for the alleged loss or damage.

This Court rejects Allied's contention that it may escape liability on summary judgment because, as a matter of law, Molloy's claim fails to meet the fifth requirement. Molloy's claim need not seek a "specified" amount of money, and indeed does seek the "payment of a ... *determinable* amount of money."[12] Molloy's claim seeks an amount that is capable of being determined, ascertained, decided upon, or resolved; capable of being fixed conclusively or authoritatively; or capable of being settled or decided by choice of alternatives or possibilities. Said differently, Allied has not shown that, as a matter of law, the amounts demanded in Molloy's letters are not "determinable" within the meaning of 49 C.F.R. § 370.3(b)(3) and 49 C.F.R. § 1005.2(b)(3). Therefore Allied is subject to liability for any loss or damage to Molloy's household goods caused by Allied during transportation.

Allied's argument is not strengthened by the fact that some of the documents submitted by Molloy—standing alone—do not meet each of the five minimum filing requirements. The regulations do not require that Molloy's first letter to Allied contain every piece of information pertinent to processing. On the contrary, even a proper claim that complies with all five minimum requirements may be insufficient for payment. The regulations permit Allied to obtain supplementation of the documentary evidence, and do not prohibit Molloy from claiming compensation for the estimated cost of repairing a shipped item by giving Allied a repair appraisal. Indeed, it is unlikely that Molloy could prove to Allied's satisfaction the value of repairs to damaged or missing antique furniture absent the opinion of an expert repairer or appraiser.

**B. Payment Requirement**

██ Allied claims that, as a matter of law, Molloy's claim is barred by his failure to pay Allied's shipping charges as required by the bill of lading. Additionally, Allied claims that, as a matter of law, it is entitled to recover from Molloy $4,524.83 in transportation charges. Taken to its logical extent, Allied's argument is that no shipper may recover from Allied unless he has first paid Allied's full transportation charge—even if Allied never delivers his household goods, and even if Allied delivers only severely damaged "pile of matchsticks." Allied is mistaken.

██ The Carmack Amendment provides the "exclusive" remedy to the shipper against a common carrier for goods lost or damaged during interstate transportation. In order to establish a prima facie case under the Carmack Amendment, Molloy need not show that he made payment. Rather, Molloy must show that the

---

**12.** Even if Molloy's claim were properly considered to be a claim for an "uncertain" amount because of the unspecified-yet-determinable value of the remaining 7%, Allied cannot simply ignore or deny the claim.

Rather, the regulations require Allied to determine the condition of Molloy's shipment, and to ascertain as nearly as possible the extent, if any, of the loss or damage for which it may be responsible.

goods were delivered to Allied in good condition; that a considerable portion did not arrive; that the portion that did arrive was damaged or diminished; and, that Molloy has suffered specific damages as a result. Molloy has met this burden. Molloy's claims are not barred by his failure to pay for the shipment.

Furthermore, Allied has not shown that it is entitled to recover for shipping charges under the bill of lading. Section 3(a) of the bill of lading, states that:

> The shipper, upon tender of shipment to carrier, and the consignee, *upon acceptance of delivery of the shipment from carrier,* shall be liable, jointly and severally, for all unpaid charges payable on account of a shipment in accordance with applicable tariffs including, but not limited to, sums advanced or disbursed by a carrier on account of such shipment and all costs of collection including, but not limited to, attorney's fees and court costs.

Docket No. 30, Exhibit A (emphasis added). Under the terms of the bill of lading, the shipper's liability for payment depends on "delivery and acceptance" of the shipment. Here, Molloy refused to sign a release recognizing the delivery of the shipment. Indeed, Molloy contends that he did not accept the delivery of the property.

Allied has not shown that, as a matter of law, it made the agreed delivery, or that Molloy accepted delivery. But even assuming that Allied has shown delivery and acceptance, Allied has provided no authority supporting its position that Molloy's claims are barred under the Carmack Amendment for his failure to first pay for the delivery. On the present record, Allied has not established that it is entitled to payment for shipping charges, interest, and collection expenses.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant Allied's Second Motion for Summary Judgment [Docket No. 30] is **DENIED.**