**Jeff ADELMAN d/b/a Jeff Adelman Sales & Service, Plaintiff,**

v.

**HUB CITY LOS ANGELES TERMINAL, INC., et al., Defendants.**

No. CV–93–N–0942–S.

United States District Court,
N.D. Alabama,
Southern Division.

July 7, 1994.

Robert R. Riley, Jr., Hare Wynn Newell & Newton, Birmingham, AL, for Jeff Adelman.

John Edward Goodman, Bradley Arant Rose & White, Birmingham, AL, for Hub City Los Angeles Terminal, Inc.

Michael W. Ray, Charles E. Sharp, Sadler Sullivan Herring & Sharp, Birmingham, AL, for Burlington Northern R. Co. and Atchison Topeka & Santa Fe.

Richard W. Lewis, London Yancey Elliott & Burgess, Birmingham, AL, for Star Freight.

Robert E. Parsons, Parsons Lee & Juliano, Birmingham, AL, for DCC Inc.

## MEMORANDUM OF OPINION

(Corrected)

EDWIN L. NELSON, District Judge.

This case is presently pending before the court on motions for summary judgment filed by defendants Star Freight, Inc.; Hub City Los Angeles Terminal, Inc. ("Hub City"); and Burlington Northern Railroad Company ("Burlington Northern"). The motions were submitted at the motion docket of April 21, 1994.

### I. Introduction.

In the original complaint, Jeff Adelman alleged that some of his goods were damaged, lost, or stolen during the transportation of those goods from California to South Carolina. He alleged:

> In the course of said goods being transported from Los Angeles to South Carolina, the tractor trailer truck carrying said goods came to Jefferson County, Alabama.[1] Said truck stopped in Jefferson County and was required to unload many of the items which had been loaded into the trailer. Hub City Los Angeles Terminal, Inc. instructed [Burlington Northern] to break the seal of the trailer and unload the additional weight so it could continue to be transported. [Burlington Northern] was to then deliver said goods to Star Freight. Star Freight was to deliver said goods to Plaintiff.
>
> Plaintiff avers that [Hub City] negligently and/or wantonly overloaded said tractor

---

1. The goods were actually loaded into several containers at the plaintiff's place of business in California by employees of the plaintiff. The containers were then transported by trucks to the Atchison, Topeka & Santa Fe Railroad Terminal in Los Angeles where the containers were loaded onto railcars for the cross-country trip to South Carolina. In Avard, Oklahoma, they were given over to Burlington Northern, who then transported them to Birmingham.

trailer which was used to transport said goods to Plaintiff; but for the negligence of [Hub City] it would not have been necessary to break the seal of the tractor trailer, unload said goods, and such goods would not have been lost. Furthermore, Plaintiff alleges the overloading by Hub City was a breach of contract.

Plaintiff further avers that [Burlington Northern] negligently and/or wantonly supervised the loading and unloading of said goods resulting in many of the said goods being lost.

(Complaint, filed April 2, 1993, ¶¶ 5–7)

On June 25, 1993, Adelman amended his complaint to add Star Freight as a defendant. He then filed a second amended complaint alleging that Star Freight "negligently and/or wantonly loaded, unloaded, and/or transported Plaintiff's goods resulting in many of the said goods being lost; but for the negligence of Defendant Star Freight, said goods would not have been damaged or lost." (Amended Complaint (Second), filed Sept. 2, 1993, ¶ 9) In his sixth amended complaint, the plaintiff asserted a claim "based on the Carmack Amendment §§ 11707, 10703, 10505 and any other appropriate sections of said Amendment which became relevant due to facts learned through additional discovery." (Amended Complaint (Sixth), filed March 14, 1994, ¶ 16).

## II. Summary Judgment Standard.

■ Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. The movant can meet this burden by presenting evidence showing

there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. at 2552–53; *see* Fed.R.Civ.P. 56(a) and (b). There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553.

■ Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. The nonmoving party need not present evidence in a form necessary for admission at trial, however she may not merely rest on her pleadings. *Id.* "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552.

■ After a properly made motion has been properly responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-

sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512; *see also Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 745 n. 11, 103 S.Ct. 2161, 2171, 76 L.Ed.2d 277 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts". *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11 (citations omitted); *accord Spence v. Zimmerman,* 873 F.2d 256 (11th Cir.1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513; *Cottle v. Storer Communication, Inc.,* 849 F.2d 570, 575 (11th Cir.1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n. 12 (11th Cir.1988).

## III. Star Freight.

At the motion docket, conducted in open court, counsel for the plaintiff conceded that Star Freight's motion is due to be granted and Star Freight is due to be dismissed.

## IV. Hub City.

### A. Introduction.

The plaintiff has alleged: (1) that Hub City instructed Burlington Northern to break the seal on the container carrying his goods and unload some of the goods, (Complaint, ¶ 5); (2) that Hub City negligently and/or wantonly overloaded the container in California, (Complaint, ¶ 6); and (3) that Hub City is liable pursuant to the Carmack Amendment, [49 U.S.C.] §§ 11707, 10703, 10505 and any other appropriate sections of said Amend-

ment." (Amended Complaint (Sixth), filed March 14, 1994, ¶ 16) Hub City filed its motion for summary judgment contending it was entitled to judgment as a matter of law because it neither instructed Burlington Northern to break the seal nor loaded the plaintiff's goods.

### B. Discussion.

### 1. Carmack Amendment claim.

■ The Carmack Amendment provides:

A common carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under subchapter I, II, or IV of chapter 105 of this title and a freight forwarder shall issue a receipt or bill of lading for property it receives for transportation under this subtitle. That carrier or freight forwarder and any other common carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Commission under subchapter I, II, or IV are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (1) the receiving carrier, (2) the delivering carrier, or (3) another carrier over whose line or route the property is transported....

49 U.S.C. § 11707(a)(1). "A shipper establishes a prima facie case of a carrier's negligence under the Carmack Amendment by evincing proof by a preponderance of the evidence that the goods '1) were delivered to the carrier in good condition, 2) arrived in damaged condition, and 3) resulted in the specified amount of damage.'" *Fuente Cigar, Ltd. v. Roadway Express, Inc.,* 961 F.2d 1558, 1560 (11th Cir.1992) (quoting *Fine Foliage of Florida, Inc. v. Bowman Transportation, Inc.,* 901 F.2d 1034, 1037 (11th Cir. 1990); *Offshore Aviation v. Transcon Lines, Inc.,* 831 F.2d 1013 (11th Cir.1987)).

■ At the motion docket the plaintiff conceded that he had no claim against Hub City arising under the Carmack Amendment be-

cause Hub City was neither a carrier[2] nor a freight forwarder[3] and Hub City never had custody of the goods. Therefore, Hub City's motion for summary judgment is due to be granted on the Carmack Amendment claim and that claim is due to be dismissed.

### 2. State common-law claims.

#### a. Negligence and/or wantonness.

■ The undisputed evidence shows that Hub City was not involved in the physical handling of the plaintiff's goods and that it did not instruct Burlington Northern to break the seal on the trailer. Hub City did not pick up, load, unload, consolidate, or in any way physically handle the plaintiff's goods. (Defendant's Statement of Undisputed Facts, ¶ 9) Hub City's activities were limited to engaging in written and telephone communications for the purpose of obtaining transportation for the plaintiff, payment of the carriers' fees, and subsequent billing of the plaintiff.[4] The evidence also shows that Hub City did not instruct Burlington Northern to break the seal on the trailer. The evidence, which is conflicting, shows that Hub City was notified after the seal had been broken by a facsimile transmission of the "Overweight Record" prepared by Tim Liles,[5] (Defendant's Exhibit E);[6] or that Hub City was notified by Liles before the seal was broken and Hub City referred Liles to Vickie Adelman, the plaintiff's wife and an employee of Adelman Sales and Service. In any event, the evidence is clear and undisputed that this defendant did not instruct Bur-

lington Northern to break any seal on the plaintiff's shipment.

Therefore, because there is no dispute that Hub City neither negligently nor wantonly overloaded the container nor instructed Burlington Northern to break the seal on the container and unload the additional weight, summary judgment is due to be granted on the common law claims.

#### b. Breach of contract.

The complaint alleges "the overloading by Hub City was a breach of contract." (Complaint, ¶ 5). However, as stated above, the evidence is undisputed that Hub City did not load the container. Therefore, there is no evidence to support the claim for breach of contract based upon overloading of the containers.

■ In his response to Hub City's motion for summary judgment, the plaintiff asserts a breach of contract claim against Hub City based on an alleged agreement whereby Hub City guaranteed delivery of the plaintiff's goods door-to-door. The complaint, however, does not contain a claim that Hub City breached a contract with the plaintiff in which it "guaranteed" delivery of the plaintiff's goods "door-to-door." Also, even if this court were to indulge this claim despite the plaintiff's failure to plead it in his multiple complaints, such claim is meritless as there is no evidence that Hub City "guaranteed" delivery of the plaintiff's goods.

**2.** A carrier is an "[i]ndividual or organization engaged in transporting passengers or goods for hire." *Black's Law Dictionary* 214 (Deluxe 6th ed. 1991); *see also* 49 U.S.C. § 10102(2) (defining "carrier" as "common carrier and a contract carrier").

**3.** A "freight forwarder" is defined as an individual or organization that "collect[s] and consolidate[s] less than carload or less than truckload shipments and secure[s] common carrier transportation for the long haul movement of property owned by individual shippers by carload or truckload." *Black's Law Dictionary* 666 (Deluxe 6th ed. 1991).

**4.** The plaintiff disputes this fact in his response to Hub City's motion. However, his response was untimely and failed to cite the court to any specific evidence as required by Exhibit D to the

court's Rule 16 scheduling order. The plaintiff's response stated only that the documents Hub City relied on did not support the fact. The court, however, has reviewed the evidence submitted by Hub City in support of this fact (Decker's affidavit, ¶ 5; Hub City's Responses to Interrogatories 10 and 13) and found it to clearly support the fact that Hub City never had control or possession of the goods and that Hub City's role was limited to the procurement of transportation for the plaintiff's goods.

**5.** Tim Liles, an employee of Western Equipment Leasing Company, was hub supervisor at Burlington Northern's Dixie Intermodal Hub Center at the time pertinent to this action.

**6.** The plaintiff disputes this fact; however, he has failed to cite any evidence showing the existence of a question of fact.

The plaintiff has submitted a letter, which was dated April 28, 1992, and addressed to "Judy" at "Adelman Sales," that states:

> Please note your current rate listed below. If you have any questions or if we can be of service in any way, don't hesitate to give me a call.
>
> Simi Valley, Ca. (to) Greenville, SC. D–D[7] $1797 45′ Rail
>
> (If additional charges are incurred, check with our office for costs. Shipper is responsible for legal weight limits and any fines incurred. See enclosed material for weight limitations.)
>
> Note: If rate herein quoted is not used within 30 days from the date above, please call to confirm.
>
> Payment on all Hub City freight bills must be received in our office WITHIN 15 DAYS following the date of shipment (upon approval of credit) as our competitive rates are predicated on Hub City's payment to various railroads and over-the-road carriers within 7 to 10 days.
>
> Hope you find the above rate attractive and we look forward to being a valued service to your fine company.

(Plaintiff's Exhibit 1) The letter submitted by the plaintiff has a hand-written note on the bottom, which states: "Sending a pkg. 1½ hours free loading time. 36 dollars after for driver to wait. Approval for rail."

This letter does not support the plaintiff's contention that Hub City, by contract, agreed to guarantee the delivery of plaintiff's goods. The letter is clearly a mere rate quote. As such, its contents do not support the claim that Hub City, by quoting the rate for transporting his goods—door-to-door from Simi Valley, California, to Greenville, South Carolina,—offered or agreed to guarantee the shipment. The court finds that the plaintiff has failed to show any evidence that Hub City offered or agreed to guarantee the delivery of his goods. Summary judgment on this claim is due to be granted.

### C. Conclusion.

The court concludes that defendant Hub City is entitled to summary judgment on all claims.

## V. Burlington Northern.

### A. Introduction.

The plaintiff has alleged: (1) "that [Burlington Northern] negligently and/or wantonly supervised the loading and unloading of said goods resulting in many of the said goods being lost," (Complaint, ¶ 6); and (2) that Burlington Northern is liable pursuant to the Carmack Amendment. (Amended Complaint (Sixth), filed March 14, 1994, ¶ 16) Burlington Northern filed a motion for summary judgment contending it was entitled to judgment as a matter of law because it did not supervise the loading and unloading of the plaintiff's goods, and the notice of claim, a precondition to bringing suit pursuant to the Carmack Amendment, was not sufficient.

### B. Discussion.

#### 1. Carmack Amendment claim.

■ Burlington Northern argues that its motion for summary judgment is due to be granted because the plaintiff failed to give proper notice of claim under the Carmack Amendment. It argues that the contract between Hub City and Atchison, Topeka and Santa Fe Railway Company (hereinafter "ATSF"), which was referenced in the waybill, governs the notice question. However, the plaintiff disputes this fact, asserting that it was never a party to the contract and thus is not bound by its terms. Assuming this fact is true and the plaintiff is not bound by that contract, the court is required to look to the bill of lading for the terms and conditions for transportation of the plaintiff's goods. *See* 49 U.S.C. § 11707(a)(1).

The bill of lading for the goods at issue states on its face the following:

> It is mutually agreed as to each carrier of all or any of, said property over all or any portion of said route to destination and as to each party at any time interested in all or any said property, that *every service to*

7. Plaintiff states that "D–D" stands for "door-to-    door."

*be performed hereunder shall be subject to all the terms and conditions of the Uniform Domestic Straight Bill of Lading* set forth (1) in Uniform Freight Classifications in effect on the date hereof, if this is a rail or a rail-water shipment, or (2) in the applicable motor carrier classification or tariff if this is a motor center shipment.

Shipper hereby certifies that he is familiar with all the terms and conditions of the said bill of lading set forth in the classification or tariff which governs the transportation of this shipment and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns.

(Defendant's Motion for Summary Judgment, Exhibit 1).

The Uniform Domestic Bill of Lading, referred to in the bill of lading requires, as a condition precedent to recovery, that a claim for the loss be made in writing within nine months of the loss.[8] Uniform Domestic Bill of Lading, 52 I.C.C. 671, Appendix B § 2(b), as amended 49 C.F.R. § 1035.2 Appendix D; *see also East Texas Motor Freight Lines v. United States*, 239 F.2d 417, 418 and 421 n. 3 (5th Cir.1956). The minimum filing requirements for that notice established by the Interstate Commerce Commission are as follows:

A written ... communication ... from the claimant, filed with a proper carrier within the time limits specified in the bill of lading or contract of carriage or transportation and: (1) Containing facts sufficient to identify the baggage or shipment (or shipments) of property, (2) asserting liability for alleged loss, damage, injury, or delay, and (3) making claim for the payment of a specified or determinable amount of money,[9] shall be considered as sufficient compliance with the provision for filing claims embraced in the bill of lading or other contract of carriage.

49 C.F.R. § 1005.2(b). A claim for an amount uncertain, "such as $100 more or less," is not considered a "formal claim in writing for a specified or determinable amount of money ... filed in accordance with the provisions of paragraph (b)." 49 C.F.R. § 1005.2(d); *see also Salzstein v. Bekins Van Lines, Inc.*, 993 F.2d 1187, 1190 n. 3 (5th Cir.1993); *Nedlloyd Lines, B.V. Corp. v. Harris Transport Co.*, 922 F.2d 905, 908–09 (1st Cir.1991).

On July 21, 1992, Vickie Adelman sent a letter to Tim Liles in care of Burlington Northern. (Plaintiff's Exhibit 5) The letter stated that the plaintiff had noticed the following items were missing:

—2 wooden crates approximately 3' × 3' × 3' full of aluminum casted pieces and machine tooling

—2 yellow file cabinets drawers full of machine tooling and special collates for use on precision lathes

—1 brand new truck tire with rim # 16/5

—1 box lid approximately 5' × 2'½" powder coated black

*Id.* Also, in the letter, Mrs. Adelman stated, "Tim, all of these items are extremely important to us especially the machine tooling. This tooling was made up for us from aerospace harden steel and it will be almost impossible to replace, not to mention extremely costly. Off the top I would say the tooling and castings are worth $15,000 + ."

The plaintiff contends that its notice to Burlington Northern was sufficient, and relies on *Insurance Company of North America v. G.I. Trucking, Co.*, 1 F.3d 903 (9th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 690, 126 L.Ed.2d 658 (1994). The plaintiff argues that *G.I. Trucking* held that the amount stated in the notice of claim letter does not have to be an amount certain. In that case, the shipper's insurance company sent a letter to the carrier that stated the amount of its claim as $100,000 (Estimate)." The Ninth Circuit held that the notice required was "written notice of damage and a clearly communicated intent to hold [the car-

---

**8.** The court notes that the ATSF contract allows the shipper 12 months to file its claim. (Defendant's Exhibit I, ATSF Circular Intermodal No. 1, Item 52(1)).

**9.** A "determinable amount of money" is defined as "an amount determinable, as a matter of mathematics, from a perusal of the documents submitted in support of the notice of claim." *Salzstein v. Bekins Van Lines, Inc.*, 993 F.2d 1187, 1190 (5th Cir.1993) (quoting *Bobst Div. of Bobst Champlain, Inc. v. I.M.L. Freight*, 566 F.Supp. 665, 669 (S.D.N.Y.1983)).

rier] liable." However, the Ninth Circuit held that the amount of the claim in this instance was sufficient because the carrier had undertaken an investigation of the loss. The court also notes that the Ninth Circuit held that the letter sent by the shipper's insurer "clearly identified the shipment and asserted liability," and the amount of damages, though not specified in the letter, "was arguably determinable from the other information given in the letter or readily available to the carrier." *Id.* at 907. The Ninth Circuit noted its holding had not followed the generally accepted law of other circuits. *Id.* at 906 (citing *Nedlloyd,* 922 F.2d at 908–09; *Pathway Bellows, Inc. v. Blanchette,* 630 F.2d 900, 900–03 (2d Cir.1980), *cert. denied,* 450 U.S. 915, 101 S.Ct. 1357, 67 L.Ed.2d 340 (1981)).

Nevertheless, even if this court were to follow the holding of *G.I. Trucking,* the plaintiff's letter to Burlington Northern would yet be inadequate as a notice of the claim. The Ninth Circuit stated that the amount "estimated" by the shipper in *G.I. Trucking* was the same as the amount asserted by the shipper's insurer in its complaint. The Ninth Circuit held, therefore, that the amount was a "reasonable estimate" and, thus, satisfied the requirement that the claim contain the amount of claim. In the present action, the amount stated in the letter to Burlington Northern was "15,000+." (Plaintiff's Exhibit 5) In a subsequent letter to Hub City, the amount claimed by the plaintiff was $67,-248.56. (Plaintiff's Exhibit 6) At her deposition, Mrs. Adelman submitted that the amount claimed was $67,248.56 for the goods lost plus additional damages totalling over $74,000.[10] (Defendant's Exhibit R). The amount asserted in the notice to Burlington Northern, "$15,000+" is approximately 22% of the amount claimed in the Hub City letter and approximately 11% of the amount claimed by Mrs. Adelman at her deposition. There is no evidence that the amount claimed

in the Burlington Northern letter was a "reasonable estimate," and, thereby satisfied the "amount of claim" requirement as set forth in *G.I. Trucking.*

■ Moreover, although the Ninth Circuit may have found that a "reasonable estimate" is sufficient, the Eleventh Circuit has stated, "One of the principal functions of the notice requirement in the bill of lading is to allow the carrier to *exactly* compute its losses." *Farmland Industries, Inc. v. Seaboard C.L.R. Co.,* 733 F.2d 1509, 1510 (11th Cir. 1984). Therefore, in the Eleventh Circuit, the shipper must inform the defendant of the *specific* amount of his claim or sufficient facts that the amount of the specific amount of the claim can be determined.

In this case, the plaintiff has failed to show this court that he did either. The court finds, as a matter of law, that the plaintiff has failed to establish that it gave the notice to Burlington Northern required by its bill of lading.[11] Therefore, Burlington Northern's motion for summary judgment on the Carmack Amendment claim is due to be granted.

## 2. State common-law claims.

■ Summary judgment on the state common-law claims against Burlington Northern is proper because the Carmack Amendment provides the "exclusive" remedy of the shipper against a common carrier for goods lost or damaged during interstate transportation. *Roadway Express, Inc. v. Fuente Cigar, Ltd.,* 749 F.Supp. 248, 254 (S.D.Fla.1990), *vacated on other grounds,* 961 F.2d 1558 (11th Cir.1992); *George R. Hall, Inc. v. Superior Trucking Co.,* 514 F.Supp. 581, 583 (N.D.Ga.1981); *see also Moffit v. Bekins Van Lines Co.,* 6 F.3d 305, 307 (5th Cir.1993); *Ting–Hwa Shao v. Link Cargo (Taiwan) Ltd.,* 986 F.2d 700, 706–07 (4th Cir.1993); *Hughes Aircraft Co. v. North American Van Lines, Inc.,* 970 F.2d 609, 613–14 (9th Cir.1992); *Underwriters at Lloyds of London v. North American Van*

---

**10.** The additional damage claims include: (1) $18,000—machinists working 8–10 weeks "on [replacement] jigs that were not made right;" and (2) over $56,000—"parts that are no [sic] good-machined." (Defendant's Exhibit R)

**11.** The court also notes that the notice is also insufficient because it failed to assert that Burlington Northern was liable for the lost and damaged goods and it did not make a claim against

Burlington Northern. Vickie Adelman stated in her deposition that in July of 1993, she told Tim Liles, "I was filing a claim with [Hub City] and then if, you know, if they had to pay for anything that I lost, then they would probably sue him for what was lost because ... B & N were the people that opened the seal." (Vickie Adelman Depo., p. 159)

*Lines,* 890 F.2d 1112, 1113 (10th Cir.1989); *Hughes v. United Van Lines, Inc.,* 829 F.2d 1407, 1415 (7th Cir.1987), *cert. denied,* 485 U.S. 913, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988); *Intech, Inc. v. Consolidated Freightways, Inc.,* 836 F.2d 672, 677 (1st Cir.1987); *Fulton v. Chicago, R.I. & P.R. Co.,* 481 F.2d 326, 331 (8th Cir.), *cert. denied sub nom., Soo L.R. Co. v. Fulton,* 414 U.S. 1040, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973); *W.D. Lawson & Co. v. Penn Cent. Co.,* 456 F.2d 419, 421 (6th Cir.1972); *United States v. Reading Co.,* 289 F.2d 7, 9 (3d Cir.1961); *Dress Barn, Inc. v. LTA Group, Inc.,* 822 F.Supp. 88, 89 (D.Conn.1993). Therefore, all state common-law claims asserted against Burlington Northern are due to be dismissed.

## VI. Conclusion.

An order dismissing all claims against Burlington Northern, Star Freight, and Hub City will be entered contemporaneously with this memorandum of opinion.