SIEMENS POWER TRANSMISSION & DISTRIBUTION, INC., Plaintiff,

v.

NORFOLK SOUTHERN RAILWAY COMPANY, Defendant.

No. 6:02CV1024 ORL 22KRS.

United States District Court, M.D. Florida, Orlando Division.

Aug. 5, 2004.

Thomas Albert Boyd, Jr., Boyd & Sutter, P.A., Jacksonville, FL, Iliaura Hands, Miller & Williamson, LLC, New Orleans, LA, Machale A. Miller, Miller & Williamson, LLC, New Orleans, LA, G.J. Rod Sullivan, Jr., Sullivan & Company, Jacksonville, FL, for Plaintiff.

Jeffrey D. Cohen, Janssen Keenan & Ciardi P.C., Paul D. Keenan, Janssen Keenan & Ciardi P.C., Philadelphia, PA, Douglas John LaPointe, Cameron, Hodges, Coleman, LaPointe & Wright, P.A., Orlando, FL, for Defendant.

### ORDER

CONWAY, District Judge.

## I. INTRODUCTION

This cause comes before the Court for consideration of the Defendant's, Norfolk Southern Railway Company (hereinafter, "Norfolk Southern"), Motion for Summary Judgment (Doc. No. 36), filed June 22, 2004, to which the Plaintiff, Siemens Power Transmission & Distribution, Inc. (hereinafter, "Siemens Power"), responded (Doc. No. 51) on July 21, 2004. Having reviewed the motion and memoranda, this Court **GRANTS** the Defendant's, Norfolk Southern, Motion for Summary Judgment (Doc. No. 36).

## II. BACKGROUND

The Plaintiff, Siemens Power, is a North Carolina company engaged in the business of, *inter alia,* supplying power transmission and distribution equipment. The Defendant, Norfolk Southern, is a Virginia company engaged in the business of, *inter alia,* carrying cargo by rail.[1] This action is for monetary relief under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11706.[2]

In the Spring of 1999, the Florida Power & Light Company (hereinafter, "Florida Power"), and Siemens Power finalized an agreement for power equipment.[3] More specifically, Siemens Power agreed to sell and Florida Power agreed to purchase one electrical transformer manufactured by Siemens Power's parent company, Siemens AG, out of Numberg, Germany.[4] Under the terms of the agreement, Siemens Power was responsible for arranging the transportation of the electrical transformer from the port of Norfolk, Virginia to Florida Power's facility located in Brevard County, Florida.[5]

In order to comply with the terms of its agreement, Siemens Power contacted its transportation agent, Mr. Edward Henry (hereinafter, "Mr.Henry") of Tranco, Inc. (hereinafter, "Tranco").[6] Mr. Henry, in

---

1. *See* Complaint (Doc. No. 1), ¶ 3 at 1; *see also* Answer of Defendant Norfolk Southern Railway Company to Complaint (Doc. No. 2), ¶ 3 at 1.

2. *See generally* Doc. No. 1.

3. *See generally* Memorandum of Law in Support of Norfolk Southern Railway Company's Motion for Summary Judgment (Doc. No. 37), Ex. A; *see also* Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment (Doc. No. 30), Ex. 4 to Ex. A. Hereinafter, this Court will cite to exhibits referenced in Doc. No. 30 solely by their numerical assignation, eliminating any mention of Exhibit A.

4. *See* Doc. No. 37, Ex. A; *see also* Doc. No. 30, Ex. 4.

5. *See* Doc. No. 37, Ex. A; *see also* Doc. No. 30, Ex. 4. On that point, Siemens Power agreed to sell the electrical transformer on F.O.B. terms. *See* Doc. No. 30, Ex. 4.

6. *See* October 21, 2003 Deposition of Karl A. Seitz (Doc. No. 30, Ex. 1), line 12 at pg. 31 through line 2 at pg. 32; October 21, 2003 Deposition of William Lackey (Doc. No. 30, Ex. 2), line 13 at pg. 52 through line 12 at pg. 53; *see also* Doc. No. 37, Ex. B. On December 15, 1989. Siemens retained Tranco "as a consultant ... to provide traffic services related to the import of power transformers, power reactors, and parts thereof." *Id.* at 1.

turn, wrote to Dennis Vaughn (hereinafter, "Mr.Vaughn"), a Norfolk Southern account manager,[7] requesting a quote for the carriage of a transformer.[8] In response, Mr. Vaughn quoted Siemens Power $7.74 per hundred weight.[9]

Acting on this quote, Tranco issued Norfolk Southern a Straight Bill of Lading.[10] Among other things, the Straight Bill of Lading incorporated by reference the terms of the Uniform Straight Bill of Lading.[11] The Uniform Straight Bill of Lading provides, in relevant part:

> As a condition precedent to recovery, claims must be filed in writing with the ... carrier ... within nine months after delivery of the property ... Where claims are not filed ... in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid.[12]

Upon receiving the Straight Bill of Lading, Norfolk Southern generated a Waybill.[13] Shortly thereafter, it began preparing for the transport.

On January 15, 2000, the electric transformer arrived from Germany to Norfolk, Virginia.[14] There, it was discharged from an ocean vessel onto a railcar.[15] At all relevant times, the transformer was equipped with an electronic impact recorder.[16] That device recorded shocks the transformer experienced in its journey from Germany to Florida Power's facility in Brevard County, Florida.[17]

On January 20, 2000, Norfolk Southern started moving the transformer from Norfolk, Virginia, to Jacksonville, Florida.[18] In Jacksonville, the transformer was interchanged to the Florida East Coast Railroad.[19] Ultimately, the Florida East Coast Railroad delivered the transformer to Florida Power on January 28, 2000.[20]

Once the transformer arrived at Florida Power, an inspection was performed. In the course of that inspection, the computerized shock recorder was analyzed.[21] The shock recorder revealed that shocks in excess of the thresholds Siemens Power set for the safe carriage of the transformer occurred—at least in part[22]—within the

---

7. *See* March 13, 2004 Affidavit of Dennis Vaughn (Doc. No. 45, Ex. 3), ¶ 2 at 1.

8. *See* Doc. No. 30, Ex. 6.

9. *See* March 29, 2004 Deposition of Dennis Vaughn (Doc. No. 30, Ex. 5), lines 18 through 22 at pg. 26; *see also* April 7, 2004 Deposition of Edward P. Henry (Doc. No. 30, Ex. 7), lines 1–21 at pg. 57.

10. *See* Doc. No. 30, Ex. 8. A straight bill of lading is a:"nonnegotiable bill of lading that specifies a consignee to whom the carrier is contractually obligated to deliver the goods." Black's Law Dictionary 160 (7th ed.1999).

11. *See id.*

12. Doc. No. 37, Ex. O, § 2(b).

13. *See* Doc. No. 30, Ex. 10. A waybill is synonymous with a bill of lading. Black's Law Dictionary 159 (7th ed.1999).

14. Doc. No. 37, Ex. G at 2.

15. *See id.*

16. *See* Doc. No. 37, ¶ 7 at 2; *see also* Doc. No. 52, ¶ 7 at 1.

17. *See* Doc. No. 37, ¶ 7 at 2; *see also* Doc. No. 52, ¶ 7 at 1.

18. *See* Doc. No. 37, Exs. E & F.

19. *See* Doc. No. 37, Exs. E & F.

20. *See* Doc. No. 37, Exs. E & F.

21. Doc. No. 37, ¶ 11 at 3; *see also* Doc. No. 52, ¶ 11 at 2.

22. The parties disagree on this point. Siemens Power maintains that "all damaging shocks were recorded within the time that [Norfolk Southern] had custody and control over the transformer[.]" Doc No. 52, ¶ 11 at 2. Conversely, Norfolk Southern argues that excessive shocks were recorded "both before, during and after" the time it was in possession of the transformer. Doc. No. 37, ¶ 11 at 3.

time frame that Norfolk Southern had custody and control over the transformer.[23] Further investigation revealed that the transformer was not operating properly, and that it was in need of repairs.[24]

On March 1, 2000, Mr. Henry sent Norfolk Southern a letter expressing an intent to file a claim against Norfolk Southern for damage to the electrical transformer.[25] In relevant part, the letter read:

> Please accept this letter as our intent to file a claim for damage to an electrical transformer moving from the Port of Norfolk, VA to Titusville, FL on ... 1/21/00.
>
> The computerized impact recorder showed longitudinal impacts on 1/21/00 at ... approximately 4:00 P.M. The load was in a train moving from Crewe, VA to Linwood, NC.
>
> Upon an inspection damage was noted and Siemens technical engineers are evaluating the damage.
>
> At this time[,] we cannot state a cost for repairs but will send you a report when available. Siemens estimated repairs at $25,000.00.[26]

The next day, Mr. Henry faxed a follow-up letter:

> Reference ours 3/1/2000 regarding possible claim for damage to one electrical transformer moving [from] Norfolk, VA to Titusville, FL. Siemens will have an inspection team at the site on Tuesday to test for the "short" they found in the preliminary inspection. Would you want an [Norfolk Southern] representative on hand to observe this activity?

Best Regards,
Ed Henry [27]

Norfolk Southern did not respond, and no representative of that company appeared at the inspection.[28]

Approximately one month later, on April 5, 2000, Mr. Henry sent yet another letter to Norfolk Southern referencing the damaged transformer.[29] The letter indicated that the total cost of repairs would range between $700,000–$800,000.[30] It further stated that the transformer would be returned to Germany.[31] Finally, it recommended that Norfolk Southern send a representative to Florida Power to inspect the unit:

> Reference ours 3/1/2000 and 3/2/2000 regarding damage to a transformer moving from Norfolk, VA to Titusville, FL.
>
> Siemens inspected the unit and did find damage and they plan to return the unit to Germany for repairs.
>
> At this time Siemens is estimating the total cost of $700,000–$800,000 and that is the amount of our claim. This covers transportation back to Germany, repairs, and return to [Florida Power] at Cape Canaveral, FL.
>
> Mr. Costa, Siemens insurance company's representative, will be inspecting the unit at Cape Canaveral on Monday, April 10, 2000. We feel the [Norfolk Southern] should have their representative at this inspection to protect your interests.

---

**23.** Doc. No. 37, ¶ 11 at 3; *see also* Doc. No. 52, ¶ 11 at 2.

**24.** Doc. No. 37, ¶¶ 12–14 at 3; *see also* Doc. No. 52, ¶¶ 12–14 at 2.

**25.** *See generally* Doc. No. 37, Ex. 1.

**26.** *Id.*

**27.** Doc. No. 37, Ex. J.

**28.** *See* Siemens Opposition to Motion for Summary Judgment (Doc. No. 51) at 1.

**29.** *See generally* Doc. No. 37, Ex. K.

**30.** *See generally id.*

**31.** *See generally id.*

If you schedule someone to be at the [Florida Power] facility on the 10th please advise and we will give you directions and contacts.[32]

In reply to this letter, Norfolk Southern sent its surveyor, Dr. Scheer, to Florida Power.[33] At that location, a joint inspection took place.[34]

Following the joint inspection, Mr. Henry notified Norfolk Southern of Siemens Power's intention to return the transformer back to Germany for repairs.[35] His correspondence with Norfolk Southern cautioned: "Unless we hear differently from the [Norfolk Southern] Railroad, within 72 hours we will initiate the return of the unit to Germany."[36] Mr. Henry did not hear differently. As a result, the transformer was returned to Germany.

Upon the arrival of the transformer in Germany, Mr. Henry sent one last facsimile to Norfolk Southern.[37] The facsimile notified Norfolk Southern that the transformer would be open for inspection on June 14, 2000.[38] It also extended an invitation to Norfolk Southern to attend the inspection.[39] No representative of Norfolk Southern attended the German inspection.

In the final result, the transformer was repaired by Siemens AG in Germany and returned to Florida Power's facility in Brevard County, Florida. A cost summary, conducted on behalf of Florida Power, pins down the total cost of the repair, including transportation expenses to and from Germany, at $752,958.00.[40]

Against that backdrop, Siemens Power, as the owner of the electrical transformer,[41] initiated this action against Norfolk Southern.[42] The Complaint seeks, *inter alia,* $791,136 [43] in monetary damages. According to Siemens Power, its losses are attributable to "the negligence of Norfolk Southern, in failing to properly carry, handle, and care" for the transformer during its transportation.[44]

Turning to the issue at hand, Norfolk Southern now moves this Court for summary judgment on the ground that Siemens Power failed to file a sufficient claim within the nine month period provided for in the Uniform Straight Bill of Lading.[45] More specifically, Norfolk Southern asserts:

Siemens [Power] failed to ... file[ ] a claim seeking a specified or determinable amount of money within nine

---

32. *Id.*

33. *See* Doc. No. 51, Ex. 10.

34. *See id.*

35. *See generally* Doc. No. 37, Ex. L.

36. *Id.*

37. *See generally* Doc. No. 37, Ex. M.

38. *See id.*

39. *See id.*

40. *See* Doc. No. 30, Ex. 18; *see also* Doc. No. 30, ¶ 13 at 7 ("Siemens' claim for damages is calculated to be approximately $752,958") (citing Ex. 18). The cost summary lists Florida Power as the customer.

41. *See* Doc. No. 30, ¶ 1 at 6; *see also* Doc. No. 45, ¶ 1 at 1.

42. *See generally* Doc. No. 1.

43. *See id.,* ¶ 11 at 3. Interestingly, in its Motion for Partial Summary Judgment (Doc. No. 28), Siemens Power adopts the damage calculation provided for in the cost summary (Doc. No. 30, Ex. 18) stating that: "damages are calculated to be U.S. $752,958 ... plus prejudgment interest and costs of litigation." Doc. No. 30 at 5 (internal citation omitted).

44. *Id.,* ¶ 6 at 2.

45. *See generally* Memorandum of Law in Support of Norfolk Southern Railway Company's Motion for Summary Judgment (Doc. No. 37).

months of delivery or at any time before filing suit. Siemens therefore failed to satisfy a condition precedent for recovery, and a cause of action never accrued. Accordingly, [Norfolk Southern] cannot be liable for [Siemens Power's] demand as a matter of well settled law.[46]

## III. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it is one that might affect the outcome of the case. *See id.* The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those materials that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant satisfies this requirement, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 584, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To meet this burden, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings." Fed.R.Civ.P. 56(e). Nor may the non-moving party rely

on a mere scintilla of evidence supporting its position. *See Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990). Rather, for a court to find a genuine issue for trial, the non-moving party must establish, through the record presented to the court, that it is capable of providing evidence sufficient for a reasonable jury to return a verdict in its favor. *See Cohen v. United Am. Bank,* 83 F.3d 1347, 1349 (11th Cir. 1996). When a court considers whether or not to enter summary judgment, it views all of the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *See Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 918 (11th Cir.1993).

## IV. LEGAL ANALYSIS

### A. GENERALLY

As previously stated, the Uniform Bill of Lading requires, "[a]s a condition precedent to recovery," that a notice of claim for damages be filed with the carrier. Doc. No. 37, Ex. O, § 2(b). In accordance with Interstate Commerce Commission (hereinafter, "the I.C.C.")[47] regulations, a notice of claim is sufficient under that provision only if five minimum filing requirements are met:

First, the claim must be a written or electronic communication. Second, the claim must be filed with a proper carrier within the time limits specified in the bill of lading. Third, the claim must contain facts sufficient to identify the shipped property. Fourth, the claim must assert liability for the alleged loss or damage. [And][f]ifth, the claim must seek the

---

**46.** *Id.* at 10 (internal citations omitted).

**47.** The I.C.C. is now the Surface Transportation Board. I.C.C. regulations are applicable because it "is well settled that the laws in force at the time of the making of a contract

enter into and form a part of the contract as if they were expressly incorporated into it." *Nat'l Distrib. Co. v. James B. Beam Distilling Co.,* 845 F.2d 307, 309 (11th Cir.1988) (internal citation omitted).

'payment of a *specified or determinable* amount of money.'

*Molloy v. Allied Van Lines, Inc.*, 267 F.Supp.2d 1246, 1253 (M.D.Fla.2003) (citing 49 C.F.R. § 370.3(b), and 49 C.F.R. § 1005.2(b)); (emphasis added); 49 C.F.R. § 1005.2(b).[48]

■ In addition, with respect to the fifth requirement, the amount of the claim must be certain:

Whenever a claim is presented against a proper carrier for an *uncertain amount,* such as '$100 more or less,' the carrier against whom such claims is filed shall determine the condition of the ... shipment involved at the time of delivery by it, if it was delivered, and shall ascertain as nearly as possible the extent, if any, of the loss or damage for which it may be responsible. *It shall not, however, voluntarily pay a claim under such circumstances unless and until a formal claim in writing for a specified or deter-*minable amount of money shall have been filed ...

49 C.F.R. § 1005.2(d) (emphasis added).[49]

With these principles in mind, Norfolk Southern argues that Siemens Power's claim[50] is fatally flawed because $700,000–$800,000 is neither a specified nor determinable amount, but instead uncertain. *See generally* Doc. No. 37.[51]

## B. SPECIFIED OR DETERMINABLE

"The federal circuits are split as to whether a claim must specify a dollar amount to be legally sufficient under 49 C.F.R. § 1005.2(b)." *Kvaerner E & C v. Yellow Freight Sys.*, 266 F.Supp.2d 1065, 1067 (N.D.Cal.2003) (internal citations omitted).

In that connection, the "Sixth, Seventh and Ninth Circuits have determined that 'substantial' compliance ... is sufficient ..., while the First, Second, and Fifth [ ] have indicated that 'strict' compliance may

---

**48.** Title 49 C.F.R. § 1005.2(b) provides, in relevant part:

Minimum filing requirements. A written or electronic communication (when agreed to by the carrier and shipper or receiver involved) from a claimant, filed with a proper carrier within the time limits specified in the bill of lading or contract of carriage or transportation and: (1) Containing facts sufficient to identify the baggage or shipment (or shipments) of property, (2) asserting liability for alleged loss, damage, injury, or delay, and (3) making claim for the payment of a specified or determinable amount of money, shall be considered as sufficient compliance with the provisions for filing claims embraced in the bill of lading or other contract of carriage; Provided, however, [t]hat where claims are electronically handled, procedures are established to ensure reasonable carrier access to supporting documents.

**49.** Documents not constituting claims include:

Bad order reports, appraisal reports of damage, notations of shortage or damage,

or both, on freight bills, delivery receipts, or other documents, or inspection reports issued by carriers or their inspection agencies, whether the extent of loss or damage is indicated in dollars and cents or otherwise...

49 C.F.R. § 1005.2(c).

**50.** Unless otherwise noted, the word "claim" refers to both proper and improper claims under the I.C.C. regulations.

**51.** "A 'determinable amount of money' is defined as 'an amount determinable, as a matter of mathematics, from a perusal of the documents submitted in support of the notice of claim.'" *Adelman v. Hub City L.A. Terminal,* 856 F.Supp. 1544, 1550 n. 9 (N.D.Ala.1994) (quoting *Salzstein v. Bekins Van Lines, Inc.,* 993 F.2d 1187, 1190 (5th Cir.1993)); *Forsikring v. Mediterranean Shipping Co.,* 2001 WL 1660255, *3, 2001 U.S. Dist. Lexis 17866, *11 (S.D.Tex. Aug. 9, 2001) (accord); *see also Bobst Div. of Bobst Champlain, Inc. v. IML–Freight,* 566 F.Supp. 665, 669 (S.D.N.Y.1983).

be necessary." *AIDA Dayton Techs. Corp. v. I.T.O.*, 137 F.Supp.2d 637, 645–46 (D.Md.2001) (collecting cases).

Substantial compliance requires only that a claim state "sufficient facts to identify the goods, assert liability, and ask for money damages." *Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 713 (6th Cir. 1999) (internal citation omitted). Strict compliance, on the other hand, requires that a claim specify an exact amount of money damages. *See Salzstein v. Bekins Van Lines, Inc.*, 993 F.2d 1187, 1190 (5th Cir.1993); *Bruker Instruments v. Bay State Moving Sys.*, 15 F.Supp.2d 156, 160 (D.Mass.1998) ("Strict compliance jurisdictions take the position that an estimate is not specific enough to meet minimum filing requirements, while substantial compliance jurisdictions hold that an estimate is sufficient") (internal citations and quotation marks omitted). As the Fifth Circuit explained:

> If damages are sought it is for the claimant to say exactly what it seeks, rather than for the carrier, against its self-interest, to say what the claimant deserves.

*Salzstein*, 993 F.2d at 1190 (internal citations omitted).

■ "The United States Court of Appeals for the Eleventh Circuit has never been asked to ... decide whether a claim seeks the payment of a 'specified or determinable' amount of money within the meaning of ... 49 C.F.R. § 1005.2(b)(3)." *Molloy v. Allied Van Lines, Inc.*, 267 F.Supp.2d 1246, 1255 (M.D.Fla.2003). However, in *Farmland Indust., Inc. v. Seaboard C.L.R. Co.*, 733 F.2d 1509, 1510 (11th Cir.1984), the appellate court quoted the following passage (from the United States District Court for the Middle District of Florida) with approval:

> One of the principal functions of the notice requirement in the bill of lading is

to allow the carrier to *exactly* compute its losses.

*Id.* at 1510 (internal citation omitted); (emphasis added). Thus, "[c]onsistent with the I.C.C.'s regulations, the Eleventh Circuit requires a shipper to inform the carrier of the specific amount of the claim, or to inform the carrier of sufficient facts so that the amount can be determined." *Molloy*, 267 F.Supp.2d at 1255 (internal citations omitted); *see also Adelman v. Hub City L.A. Terminal*, 856 F.Supp. 1544, 1551 (N.D.Ala.1994) ("in the Eleventh Circuit the shipper must inform the defendant of the *specific* amount of his claim or sufficient facts that the amount of the specific amount of the claim can be determined") (discussing *Farmland* ).

## C. LEGAL ANALYSIS

Application of the aforementioned standards, compels the conclusion that summary judgment is warranted. Even when viewing all of the evidence, and all inferences derived therefrom, in the light most favorable to the Plaintiff, a reasonable jury could not return a verdict in its favor. The Court reaches this conclusion for several reasons.

■ First. Siemens Power's claim consists of a mere estimate of damages, and "rough ... estimates of damages, standing alone, do not meet the requirement of a specified or determinable amount." *Molloy*, 267 F.Supp.2d at 1256 (internal citations omitted). An opposite conclusion would contravene the plain and unambiguous language of 49 C.F.R. § 1005.2.

Second, Siemens Power's gauge ($700,-000–$800,000) is akin to "$100 more or less," the epitome of uncertainty as that term is described under 49 C.F.R. § 1005.2(d). When that situation is presented, the I.C.C. regulations instruct carriers to reject the claim. *See* 49 C.F.R. § 1005.2(d). In place of voluntary pay-

ment, carriers are to:(1) determine the condition of the shipment involved; (2) ascertain as nearly as possible the extent, if any, of the loss or damage for which they may be responsible; and (3) await a formal claim in writing for a specified or determinable amount of money. *See id.* By sending its surveyor to inspect the electric transformer, Norfolk Southern complied with this regulation.[52]

■ Summary judgment is additionally appropriate due to the relatively large range ($100,000) of Siemens Power's estimate. On that point, "approximations of the amount owed do not meet the requirement of 'a specified and [sic] determinable amount.'" *Delphax Sys. v. Mayflower Transit, Inc.*, 54 F.Supp.2d 60, 64 (D.Mass. 1999) (finding that Plaintiff's "offering [of] a 'rough estimate ... that the damage will be in the $40,000 to $50,000 range' fails to make a claim for the payment of a specified or determinable amount" under 49 C.F.R. § 1005.2); *see also Bruker Instruments v. Bay State Moving Sys.*, 15 F.Supp.2d 156, 160 (D.Mass.1998) (finding letter stating "will not know the full extent of the damages until the unit is opened for repair at the manufacturer's facility in Switzerland, but the cost for replacement and the associated freight and other examination costs, could exceed $75,000" insufficient under 49 C.F.R. § 1005.2); *Landess v. N. Am. Van Lines*, 977 F.Supp. 1274, 1281 (E.D.Tex.1997) (finding letter demanding "in excess of $46,000" insufficient to satisfy 49 C.F.R. § 1005.2 because "it appears that the rule in the Fifth Circuit is: an estimate is not specific enough for a strict compliance jurisdiction"); *Adelman v. Hub City L.A. Terminal*, 856 F.Supp. 1544, 1551 (N.D.Ala.1994) (finding estimate varying from $15,000 + to $74,000 insufficient under 49 C.F.R. § 1005.2); *Norton Spiel Assoc., Inc. v. Carolina Freight Carriers Corp.*, 1991 WL 318804, *4, 1991 U.S. Dist. Lexis 6137, *13 (E.D.N.Y. Feb. 6, 1991) ("mere statement that the estimated cost of the damaged equipment was $35.000, does not satisfy the requirements of law for filing a claim against an interstate carrier" under 49 C.F.R. § 1005.2); *Bobst Div. of Bobst Champlain, Inc. v. IML–Freight, Inc.*, 566 F.Supp. 665, 669 (S.D.N.Y.1983) (finding letter stating "The estimated amount of damage is approximately $100,000.00" insufficient to satisfy the requirements of 49 C.F.R. § 1005.2).[53]

---

**52.** In its memorandum in opposition to summary judgment (Doc. No. 51), the Plaintiff argues that Norfolk Southern should be precluded from avoiding liability on account of Mr. Henry's (and by extension Siemens Power's) failure to comply with the I.C.C. regulations because it violated the I.C.C. regulations itself through failing to "acknowledge Siemens' April 5, 2000 claim notice within the 30 days required by 49 C.F.R. § 1005.3(a)"

Title 49 C.F.R. 1005.3(a) provides, in relevant part, that "[e]ach carrier shall, upon receipt ... of a *proper claim in the manner and form described in the regulations*, acknowledge the receipt of such claim in writing or electronically to the claimant within 30 days after the date of its receipt by the carrier." *Id.* (emphasis added). Since Norfolk Southern never received a proper claim from Siemens Power, this provision is inapplicable.

**53.** In its opposition to Norfolk Southern's Motion for Summary Judgment (Doc. No. 51), Siemens Power relies heavily on the decision rendered in *Molloy v. Allied Van Lines, Inc.*, 267 F.Supp.2d 1246 (M.D.Fla.2003). *See, e.g.*, Doc. No. 51 at 8–11. In that case, Magistrate Judge James G. Glazebrook concluded that a shipper of household goods by motor carrier satisfied the "specified or determinable" requirement notwithstanding his failure to provide the carrier with specific dollar amounts for 7% of his missing and/or damaged property. The Court held:

A shipper of household goods ... may not immediately know the precise value of lost property, or know the realistic cost of repairing a damaged item, particularly an item that is an antique. For that reason, a 'reasonable accurate indication of the value of the property' is sufficient, particularly when supported by additional documenta-

This is particularly the case here where the shipping agent, Mr. Henry, had abundant experience in the industry. *See Comsource Indep., Foodservice Cos. v. Union Pac. R.R. Co.*, 102 F.3d 438, 444 (9th Cir.1996) (recognizing that a shipper's sophistication, abundant experience, and extensive prior dealings with a carrier are relevant considerations in a Carmack Amendment case); *Glenn Hunter & Assocs. v. Union Pac. R.R. Co.*, 2003 WL 403178, *2, 2003 U.S. Dist. Lexis 2511, *5 (N.D.Ohio Jan. 22, 2003) (accord); *Aida Dayton Techs. Corp. v. Trism Specialized Carriers, Inc.*, 178 F.Supp.2d 505, 507 (D.Md.2001) (accord).

That Norfolk Southern may have had actual knowledge of the amount of Siemens Power's claim is unavailing. *See Pathway Bellows, Inc. v. Blanchette*, 630 F.2d 900 (2d Cir.1980); *see also Farmland Indus., Inc. v. Seaboard Coast Line R.R. Co.*, 733 F.2d 1509, 1510 (11th Cir.1984) (acknowledging in dicta that the Eleventh Circuit would not likely follow minority rule concluding that actual knowledge excuses a failure to submit a written claim because that view "has not been widely followed"); *Hartog Trading Corp. v. M/V Presidente Ibanez*, 1991 WL 33605, *2, 1991 U.S. Dist. Lexis 2712, *6 (E.D.La. Mar. 6, 1991) ("The overwhelming weight of authority construing the Carmack Amendment to the Interstate Commerce Act is that actual knowledge by the carrier of damage to the cargo does not obviate the legal requirement for the timely filing of sufficient written notice of claim") (internal citations omitted); *General Elec. Co. v. Brown Transport Corp.*, 597 F.Supp.

1258, 1263 (E.D.Va.1984) (accord). "Compliance with the notice of claim provisions of § 2(b) is mandatory." *Hartog Trading Corp.*, 1991 WL 33605 at *2, 1991 U.S. Dist. Lexis 2712 at *6 (internal citation omitted).

Equally unavailing is the argument that the Plaintiff's cause of action falls within an exception to the minimal filing requirements set forth in 49 C.F.R. § 1005.2.

■ Courts recognize "two situations in which the failure to file a completed claim within the specified time limit might be excused." *Nedlloyd Lines, B.V. Corp. v. Harris Transport Co., Inc.*, 922 F.2d 905, 909 (1st Cir.1991) (citing *Pathway Bellows, Inc. v. Blanchette*, 630 F.2d 900, 905 n. 10 (2nd Cir.1980)). First, is when "the shipper, despite reasonable diligence, is unable to ascertain the extent of its loss within the filing period." *Salzstein v. Bekins Van Lines, Inc.*, 993 F.2d 1187, 1191 (5th Cir.1993) (internal citations omitted). Second, is when "the carrier's conduct misled the shipper into believing that a timely filing was unnecessary." *Id.* (internal citations omitted).

Citing the first exception, Siemens Power asserts:

[U]ntil the transformer had been returned to the United States and all invoices and statements audited and approved, Siemens did not and could not know what the actual amount of damages would be. That did not occur until September 12, 2001 ... which was over 11 months after the nine-month notice period on October 28, 2000. Siemens,

tion (such as appraisal reports) made available to the carrier within the time period required by the bill of lading.
*Id.* at 1255 (internal citations omitted).

The facts in *Molloy* are distinguishable from the facts in this case. Foremost, in *Molloy* the shipper submitted a fifteen page list providing for specific dollar estimates of the value of approximately 93% of his lost and damaged items—some 615 articles. *See id.* at 1256. Moreover, with respect to the remaining 7% of the lost and damaged items, the shipper offered the carrier appraisals. *See id.* This detail in no way compares to the mere $700,000–$800,000 estimate afforded to Norfolk Southern in this case.

therefore, is excused from the specific or determinable amount of money requirement because there was no way it could have known the *exact* amount of damages within the nine month time period. Further, Siemens' delay in ascertaining its damages did not result from Siemens' failure to exercise reasonable diligence because Siemens could not control when its outside service providers would furnish all of their invoices and statements of expenses for payment by Siemens.

Doc. No. 51 at 15–16 (internal footnotes and citations omitted); (emphasis in the original).[54]

Assuming *arguendo* that the aforementioned facts are true, the Defendant is still entitled to summary judgment because Siemens Power later acquired actual knowledge of its damages, yet failed to properly communicate that information to Norfolk Southern. Indeed, as Mr. Henry testified, despite receiving notice of the total cost of repair, he (and by extension Siemens Power) never conveyed a specified dollar amount to Norfolk Southern:

Q. Were you ever provided—were you at some point provided with a specific dollar amount of the damage rather than this range?

A. I can't remember if I was given— yes, there was a time when I got something that they actually said what the cost would be, that Germany had calculated out for repairs and transportation, and it would amount to a certain figure, and I just can't recall it.

Q. Did you convey that specific dollar amount to Norfolk Southern in writing?

A. No, I did not.

Q. Did you convey that specific dollar amount in any way that you recall?

A. No, I would have had a letter that you would have been given if I had that, so I did not do that.

Doc. No. 30, Ex. 7, line 23 at pg. 159 through line 13 at pg. 160.

■ This testimony vitiates any excuse of impracticality because even when "information concerning the amount of damages is not immediately available it must be communicated in writing within a reasonable time after the shipper reasonably gains such knowledge." *General Electric Co. v. Brown Transport Corp.*, 597 F.Supp. 1258, 1267 (E.D.Va.1984); *Oregon Pear Sales Co. v. S. Pac. Transp. Co.*, 1990 U.S. Dist. Lexis 9488, *9 (D.Ore. Apr. 11, 1990) ("An ICC regulation under the Carmack Amendment requires that a notice of claim include a specific or determinable amount of money ... However, where the extent of the damage is unknown, the shipper must file a written claim within the time period and may later communicate the damage amount as soon as reasonably possible") (internal citations and quotation marks omitted).[55]

---

**54.** In an affidavit, the Siemens AG employee responsible for managing the Florida Power account, testified that the "final calculation of the damages was completed on September 12, 2001." July 14, 2004 Affidavit of Eberhard Janke (Doc. No. 51, Ex. 15),¶9 at 3.

**55.** The record indicates that until this lawsuit was filed on September 3, 2002 "Norfolk Southern was simply never provided with any computation of a claim for damage to the transformer beyond the $100,000 estimated range included in the April 5, 2000 correspondence from Edward Henry." Doc. No. 37, ¶33 at 6; Doc. No. 52, ¶33 at 3. Since Siemens Power obtained its final calculation of damages on September 12, 2001, this represents almost a year long delay. In view of the nine month deadline ordinarily applicable to shipping claims, a years time is plainly not reasonable.

## V. CONCLUSION

Based on the foregoing, it is **OR-DERED** that:

1. The Defendant's, Norfolk Southern Railway Company, June 22, 2004 Motion for Summary Judgment (Doc. No. 36) is **GRANTED**.

2. The Clerk of Court shall enter a **FINAL JUDGMENT** against the Plaintiff, Siemens Power Transmission & Distribution, Inc., and in favor of the Defendant, Norfolk Southern Railway Company. The judgment shall provide that the Plaintiff, Siemens Power Transmission & Distribution, Inc., shall take nothing on its claims against the Defendant, Norfolk Southern Railway Company. The judgment shall further provide that the Defendant, Norfolk Southern Railway Company, shall recover its costs arising from this action.

3. The Clerk of Court shall **CLOSE** the **FILE**.

4. The Clerk of Court shall **REMOVE** this case from the September 2004 trial calendar.

5. All pending motions are **DENIED** as **MOOT**.

6. The August 31, 2004 pending motions hearing scheduled in this case is hereby **CANCELLED**.